```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

JEFFREY MILLER,                    :

                   Plaintiff,      :

     -against-                     :      09 Civ. 7300 (HBP)

OFFICER ROSINI, INMATE T.          :
CHAMBLISS and WESTCHESTER COUNTY
JAIL,                              :

                   Defendants.     :

----------------------------------X

THOMAS JAMES CHAMBLISS, JR.,       :

                   Plaintiff,      :      09 Civ. 8884 (HBP)

     -against-                     :

OFFICER ROSINI and JEFFREY MILLER, :      OPINION
                                          AND ORDER
                   Defendants.     :

----------------------------------X
```

PITMAN, United States Magistrate Judge:

I.  Introduction

          Plaintiff Jeffrey Miller, a former inmate at Westchester County Jail, commenced this action pro se against Corrections Officer Anthony Rosini, former fellow inmate Thomas James Chambliss, and Westchester County Jail pursuant to 42 U.S.C. § 1983 ("Section 1983").  He alleges that on July 17, 2009, Rosini

allowed Chambliss onto the prison recreation deck at the same time as Miller.  The two then had a physical altercation in which Miller was allegedly injured (Docket Item 2 in 09 Civ. 7300).

Plaintiff Chambliss, also a former Westchester County Jail inmate, subsequently commenced an action pro se pursuant to Section 1983 against Miller and Rosini based on this same incident (Docket Item 2 in 09 Civ. 8884).  On December 4, 2009, the Honorable Harold Baer, Jr., United States District Judge, ordered that the cases be consolidated for all purposes (Consolidation Order, dated December 4, 2009 (Docket Item 10 in 09 Civ. 7300; Docket Item 5 in 09 Civ. 8884)).

By Notice of Motion dated January 29, 2010, Rosini and the County of Westchester (collectively, the "County Defendants") moved for an order dismissing the complaints pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing "(1) Plaintiffs fail to state any cause of action since they fail to allege a constitutional violation under the Eighth Amendment, (2) Officer Rosini is protected by qualified immunity, and; (3) Plaintiffs fail to state a claim against the County of Westchester" (Docket Item 17 in 09 Civ. 7300; Docket Item 13 in 09 Civ. 8884).

For the reasons set forth below, the motion is hereby granted.

II.  <u>Facts</u>

    A.  Facts Underlying
       <u>the Complaint</u>

      On July 17, 2009, Officer Williams released Miller from his cell in the Special Housing Unit at the Westchester County Jail onto the "rec. deck" for an hour of recreation time (Complaint, dated July 22, 2009 (Docket Item 2 in 09 Civ. 7300), ("Miller Compl.") at 3; Complaint, dated September 14, 2009 (Docket Item 2 in 09 Civ. 8884), ("Chambliss Compl.") at 3). After Rosini relieved Officer Williams, Miller asked Rosini to open his cell so that he could use the bathroom, but Rosini opened the door to Chambliss' cell instead.  Miller claims that Chambliss, with whom he "had issues[,]" then came onto the deck and "started yelling across the yard to other inmates" (Miller Compl. at 3).  Miller alleges that after he told Chambliss to stop, the two exchanged profanities until Chambliss "attacked" Miller (Miller Compl. at 3).  Miller "was struck on [his] head and [he] fell to the floor where [he] landed on [his already] broken hand" (Miller Compl. at 3).  Chambliss then kicked him repeatedly until Chambliss asked Rosini to let him back into his cell.  Rosini called the medical staff, who gave Miller an ice

pack for a "large contusion" on his forehead and medication for pain in his wrist and head (Miller Compl. at 3, attached page).

Chambliss' account of the events is similar.  He claims that he was sleeping in his cell when he heard Miller yelling for his "rec door" to be opened (Chambliss Compl. at 3).  Chambliss then echoed the call for Rosini to open Miller's door, but Rosini pressed the "wrong button" and opened Chambliss' cell instead. Chambliss claims that he then went onto the deck, his cell door slammed shut, and upon noticing Miller the two engaged in a verbal altercation which led to a physical altercation (Chambliss Compl. at 3).  Chambliss notes that no emergency code was called, but a medical code was used "due to inmate Miller laying on the floor complaining to be hurt" (Chambliss Compl. at 3).  He states that he tried to speak to the medical staff when they arrived, but they told him to "put in a sick call" (Chambliss Compl. at attached page).

Both plaintiffs allege injuries resulting from the altercation.  Miller claims that he suffered a large contusion on his forehead, an aggravation of his broken right wrist, and headaches.  He also states that he is "suffering mentally" from paranoia and "[e]very time [sic] [he] hear[s] a door open [he] think[s] someone is coming to attack [him] or hurt [him] in some way" (Miller Compl. at 3).  Chambliss reports only mental inju-

4

ries.  He claims to fear for his life around Rosini and "others"
and notes that Rosini had previously dislocated his left hand and
handcuffed him to a gate (Chambliss Compl. at 3, attached page).
He also notes that he is "very paranoid" and "stay[s] up for days
watching the C.O.'s desk when [he] can't see them" (Chambliss
Compl. at 3).  He reports that the prison medical staff pre-
scribed Remeron for him to help him sleep, but that he has "never
felt the same since" the altercation with Miller (Chambliss
Compl. at 3, attached page).

Both plaintiffs filed grievances with Westchester
County Jail.  In his Grievance Form, Miller complained that he
and Chambliss should not have been allowed on the recreation deck
simultaneously, and that the situation threatened Miller's safety
(Miller Grievance Form - Part I, dated July 18, 2009 and attached
to Miller Compl., ("Miller Grievance I") at 2).  He requested to
be placed "in a safer environment" and moved to a different cell
block, and asked to see a doctor for his hand and back (Miller
Grievance I at 1).  He also requested that Rosini "be written
[up] for putting [him] in an unsafe situation[,]" and requested a
copy of the incident report (Miller Grievance I at 1).  The
Grievance Coordinator substantiated Miller's complaint and
ordered Chambliss transferred to another cell, but denied Miller-
's request to move to a different cell block altogether (Miller

Grievance Form - Part II, dated July 20, 2009 and attached to
Miller Compl., ("Miller Grievance II") at 1).  He also gave
Miller a "sick call slip" for his stated injuries and noted that
any potential disciplinary action against Rosini would be deter-
mined after an investigation.  Miller indicated that he would
appeal the decision, but there is no appellate disposition listed
on his Grievance Form (Miller Grievance II at 1).

          In his Grievance Form, Chambliss alleged facts similar
to those alleged in his complaint, and added that at some point
Rosini "broke [his] hand in the door" (Chambliss Grievance Form -
Part I, dated July 19, 2009 and attached to Chambliss Compl.,
("Chambliss Grievance I") at 1).  He also stated that he felt
that the incident on the deck was "set up to hurt [him]" and
requested that Rosini "stay away" and "stop trying to hurt [him]"
(Chambliss Grievance I at 1).  The Grievance Coordinator did not
find Chambliss' complaint to be substantiated, noting Chambliss'
admission that he willingly went outside and fought with Miller
(Chambliss Grievance Form - Part II, dated July 22, 2009 and
attached to Chambliss Compl., ("Chambliss Grievance II") at 1).
The Coordinator noted that Chambliss "had the opportunity to
retreat back into [his] cell and to secure [his] rec. deck door
behind [him] which would have helped to insure [his] care and
custody" (Chambliss Grievance II at 1).  Chambliss appealed, but

6

the Chief Administrative Officer sustained the Grievance Coordi-
nator's decision (Chambliss Grievance II at 1).

    B.   <u>Procedural History</u>

        Miller filed a complaint against Chambliss, Rosini and
Westchester County Jail on August 19, 2009 seeking "damages for
[his] physical, mental, and emotional p[a]in and suffering" and
asked that Officer Rosini be reprimanded and laid off.  He also
requested that the County pay any medical bills resulting from
the incident (Miller Compl. at 1, 5).

        On October 21, 2009, Chambliss filed a complaint
against Miller and Rosini only (Chambliss Compl. at 1).  He
requested the following relief:

> 1 million dollars for this officer placing me in a
> dangerous inviorment [<u>sic</u>] and not protecting my 8th
> Amendment.  I would like this officer Rosini #1065 to
> be fired, because this is the second situation where he
> hurted [<u>sic</u>] me in a week, the first was physical and
> now its [<u>sic</u>] mental.  I would like the camera from #11
> cell and #12 cell rec. deck to be reviewed on 7/17/09
> from 12:00-1:00

 (Chambliss Compl. at 5).

        On December 4, 2009, Judge Baer signed a Consolidation
Order, consolidating the cases for all purposes (Consolidation
Order at 1-2).  Judge Baer noted that "the causes of action in
the <u>Miller</u> complaint and the <u>Chambliss</u> complaint arise from the

same altercation that took place in the Westchester County Jail,
and therefore involve common questions of law and fact" (Consoli-
dation Order at 1).  He also stated that all parties had con-
sented to this consolidation during a December 1, 2009 pretrial
conference (Consolidation Order at 1).  On December 21, 2009, the
parties consented to my exercising plenary jurisdiction over the
matter (Docket Item 12 in 09 Civ. 7300; Docket Item 7 in 09 Civ.
8884).

        The County Defendants served the present motion and
Memorandum of Law on January 29, 2010 (Notice of Motion, dated
January 29, 2010 (Docket Item 17 on 09 Civ. 7300; Docket Item 13
in 09 Civ. 8884); Defendants' Memorandum of Law, dated January
29, 2010 (Docket Item 18 in 09 Civ. 7300; Docket Item 14 in 09
Civ. 8884), ("Defs' Mem.")).  Chambliss responded in an affidavit
sworn to on February 22, 2010, but Miller took no action
(Chambliss Affidavit, dated February 22, 2010 (undocketed)).
After the County Defendants filed a Reply Memorandum of Law
(Docket Item 19 in 09 Civ. 7300; Docket Item 15 in 09 Civ. 8884),
Chambliss requested and was granted until March 26, 2010 to file
his response (Docket Item 15 in 09 Civ. 7300; Docket Item 11 in
09 Civ. 8884).[1]  However, Chambliss did not submit a further

_____

        [1]Chambliss also stated in this letter "as far as me joining
in on the motion to dismiss along with the court, yes, I would

response.  On September 30, 2010, I granted Miller until November 24, 2010 to respond to the motion to dismiss, as well as to outstanding discovery requests from the County Defendants, and indicated that no further extensions would be granted (Docket Item 22 in 09 Civ. 7300; Docket Item 18 in 09 Civ. 8884).  Miller has not, however, responded in any way.

III.  Analysis

    A.  Standards Applicable
        to a Motion to Dismiss

The standards applicable to a motion to dismiss pursuant to Rule 12(b)(6) are well-settled and require only brief review.

> When deciding a motion to dismiss under Rule 12(b)(6), [the court] must accept as true all well-pleaded factual allegations of the complaint and draw all inferences in favor of the pleader.  See City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986); Miree v. DeKalb County, 433 U.S. 25, 27 n.2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977) (referring to "well-pleaded allegations"); Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).  "'[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'"  Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)

---

like to join" (Docket Item 15 in 09 Civ. 7300; Docket Item 11 in 09 Civ. 8884).  I do not understand what Chambliss means by this statement.

> (quoting <u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949
> F.2d 42, 47 (2d Cir. 1991)).  The Court also may con-
> sider "matters of which judicial notice may be taken."
> <u>Leonard T. v. Israel Discount Bank of New York</u>, 199
> F.3d 99, 107 (2d Cir. 1999) (citing <u>Allen v. WestPoint-</u>
> <u>-Pepperill, Inc.</u>, 945 F.2d 40, 44 (2d Cir. 1991)).  In
> order to avoid dismissal, a plaintiff must do more than
> plead mere "[c]onclusory allegations or legal conclu-
> sions masquerading as factual conclusions."  <u>Gebhardt</u>
> <u>v. Allspect, Inc.</u>, 96 F. Supp. 2d 331, 333 (S.D.N.Y.
> 2000) (quoting 2 James Wm. Moore, Moore's Federal
> Practice ¶ 12.34[a][b] (3d ed. 1997)).

<u>Hoffenberg v. Bodell</u>, 01 Civ. 9729 (LAP), 2002 WL 31163871 at *3

(S.D.N.Y. Sept. 30, 2002) (Preska, D.J.); <u>see also</u> <u>In re Elevator</u>

<u>Antitrust Litig.</u>, 502 F.3d 47, 50 (2d Cir. 2007); <u>Johnson &</u>

<u>Johnson v. Guidant Corp.</u>, 525 F. Supp. 2d 336, 345-46 (S.D.N.Y.

2007) (Lynch, D.J.).

   The Supreme Court has clarified the proper mode of

inquiry for evaluating a motion to dismiss pursuant to Rule

12(b)(6), which uses as its starting point the principle that

"[a] pleading that states a claim for relief must contain . . . a

short and plain statement of the claim showing that the pleader

is entitled to relief."  Fed.R.Civ.P. 8(a)(2).

> [I]n <u>Bell Atl[antic] Corp. v. Twombly</u>, 550 U.S. 544,
> 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court
> disavowed the well-known statement in <u>Conley v. Gibson</u>,
> 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)
> that "a complaint should not be dismissed for failure
> to state a claim unless it appears beyond doubt that
> the plaintiff can prove no set of facts in support of
> his claim which would entitle him to relief."  550 U.S.
> at 562.  Instead, to survive a motion to dismiss under

> Twombly, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." Id. at 570.

Talley v. Brentwood Union Free Sch. Dist., No. 08-790, 2009 WL 1797627 at *4 (E.D.N.Y. June 24, 2009).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (citations, internal quotations and alterations omitted).

In evaluating a motion under Rule (12)(b)(6), the court must determine whether the plaintiff has alleged any facially plausible claims.  See Smith v. NYCHA, No. 09-4473-CV, 2011 WL 564294 at *1 (2d Cir. Feb. 18, 2011).  A claim is plausible when its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 129 S.Ct 1937, 1949 (2009) (citations omitted).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it

11

stops short of the line between possibility and plausibility of
entitlement to relief." Ashcroft v. Iqbal, supra, 129 S.Ct. at
1949 (internal quotations omitted).  Accordingly, "where the
well-pleaded facts do not permit the court to infer more than the
mere possibility of misconduct, the complaint has alleged -- but
it has not 'show[n]' -- 'that the pleader is entitled to re-
lief.'" Ashcroft v. Iqbal, supra, 129 S.Ct. at 1950, quoting
Fed.R.Civ.P. 8(a)(2).

    "[T]he tenet that a court must accept as true all of
the allegations contained in a complaint is inapplicable to legal
conclusions," however.  Ashcroft v. Iqbal, supra, 129 S.Ct. at
1949; Reed Const. Data Inc. v. McGraw-Hill Cos., Inc., 09 Civ.
8578, 2010 WL 3835196 at *3 (S.D.N.Y. Sept. 14, 2010) (Sweet,
D.J.).  As a result, "a court considering a motion to dismiss can
choose to begin by identifying pleadings that, because they are
no more than conclusions, are not entitled to the assumption of
truth.  While legal conclusions can provide the framework of a
complaint, they must be supported by factual allegations."
Ashcroft v. Iqbal, supra, 129 S.Ct. at 1950.

    Nevertheless, where, as here, a plaintiff proceeds pro
se, the complaint must be liberally construed to raise the
strongest claims the allegations suggest.  Haines v. Kerner, 404
U.S. 519, 520-21 (1972); Shomo v. State of N.Y., 374 Fed. App'x

12

180, 184 (2d Cir. 2010); <u>In re Sims</u>, 534 F.3d 117, 133 (2d Cir. 2008); <u>Pabon v. Wright</u>, 459 F.3d 241, 248 (2d Cir. 2006); <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994).  Moreover, liberal pleading rules apply "with particular stringency to complaints of civil rights violations."  <u>Phillip v. Univ. of Rochester</u>, 316 F.3d 291, 293-94 (2d Cir. 2003).

    B.  Standards Applicable
       to Eighth Amendment Claims

       Section 1983 imposes liability on individuals who, while acting under the color of state law, violate an individ- ual's federally-protected rights.  <u>Perkins v. Brown</u>, 285 F. Supp. 2d 279, 283 (E.D.N.Y. 2003); <u>Johnson v. Bendheim</u>, 00 Civ. 720 (JSR), 2001 WL 799569 at *5 (S.D.N.Y. July 13, 2001) (Rakoff, D.J.).  Reading plaintiffs' complaints liberally, they appear to assert that the County Defendants violated their Eighth Amendment right to safety while in custody.

       In <u>Farmer v. Brennan</u>, 511 U.S. 825, 828 (1994), the Supreme Court addressed the conditions under which an officer's failure to protect one inmate from an assault by another violates the inmate's Eighth Amendment rights.  The Court noted that the Eighth Amendment imposes a duty on prison officials to "'take reasonable measures to guarantee the safety of the inmates,'"

Farmer v. Brennan, supra, 511 U.S. at 832, quoting Hudson v.
Palmer, 468 U.S. 517, 526-27 (1984), and particularly imposes "'a
duty . . . to protect prisoners from violence at the hands of
other prisoners.'"  Farmer v. Brennan, supra, 511 U.S. at 833,
quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558
(1st Cir. 1977).  "It is not, however, every injury suffered by
one prisoner at the hands of another that translates into consti-
tutional liability for prison officials responsible for the
victim's safety."  Farmer v. Brennan, supra, 511 U.S. at 834.

         The Court set forth a two-part test to determine when
the failure to protect an inmate rises to the level of a consti-
tutional violation.  "First, the prisoner must have been 'incar-
cerated under conditions posing a substantial risk of serious
harm.'  Second, the prison official must have shown 'deliberate
indifference' to the prisoner's safety."  Hines v. Lacey, 189
F.3d 460, 1999 WL 642915 at *3 (2d Cir. 1999) (unpublished)
(internal citations omitted), quoting Farmer v. Brennan, supra,
511 U.S. at 834.  See also Lyncee v. Jenks, 98 Civ. 3638 (RCC),
2000 WL 343893 at *2-*3 (S.D.N.Y. 2000) (Casey, D.J.).  A delib-
erate indifference claim is satisfied where a plaintiff can show
that the defendant acted with "a sufficiently culpable state of
mind."  Farmer v. Brennan, supra, 511 U.S. at 834-35 (internal
citations and quotations omitted).  An official acts with this

state of mind when he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, supra, 511 U.S. at 837. See also Wilson v. Seiter, 501 U.S. 294, 298-302 (1991); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). "The subjective element requires a state of mind that is the equivalent of criminal recklessness . . . ." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). A plaintiff can establish this element by showing that "a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." Arnold v. Westchester County, 09 Civ. 3727 (JSR)(GWG), 2010 WL 3397375 at *8 (S.D.N.Y. April 16, 2010) (Gorenstein, M.J.) (internal quotations and citations omitted).

A Section 1983 claim does not lie under the Eighth Amendment for conduct that is merely negligent. "Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny . . . . To be cruel and unusual punishment, conduct that does not purport to be

15

punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986); accord County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998), citing Daniels v. Williams, 474 U.S. 327, 328 (1986) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."); accord Matican v. City of N.Y., 524 F.3d 151, 158 (2d Cir. 2008); Kruzel v. County of Suffolk, 23 Fed. App'x 95, 96 (2d Cir. 2002); John E. Andrus Memorial, Inc. v. Daines, 600 F. Supp. 2d 563, 585 (S.D.N.Y. 2009) (Seibel, D.J.); Miner v. N.Y. State Dep't of Health, 02 Civ. 3180 (MBM), 2004 WL 1152491 at *5 (S.D.N.Y. May 24, 2004) (Mukasey, D.J.); Trivedi v. Thayer, 97 Civ. 1377 (DLC), 1998 WL 799181 at *16 (S.D.N.Y. Nov. 16, 1998) (Cote, D.J.).  "Proof of mere negligence . . . will not give rise to a constitutional violation." Doyle v. Coombe, 976 F. Supp. 183, 186 (W.D.N.Y. 1997).  See also Farmer v. Brennan, supra, 511 U.S. at 835; Hendricks v. Coughlin, 942 F.2d 109, 113 (2d Cir. 1991); Jackson v. Portuondo, No. 9:01-CV-00379 (GLS/DEP), 2007 WL 607342 at *11 (N.D.N.Y. Feb. 20, 2007); Martinez v. Weir, No. 3:00CV1140 (DJS), 2006 WL 2884775 at *6 (D. Conn. Oct. 10, 2006); Hudak v. Miller, 28 F. Supp. 2d 827, 831 (S.D.N.Y. 1998) (Sotomayor, D.J.); Mabery v. Keane, 95 Civ. 1093 (JFK), 1998 WL 148386 at *7 (S.D.N.Y. Mar. 30, 1998) (Keenan, D.J.); Dexter v. Thomp-

son, No. 93-CV-0745E (F), 1995 WL 495072 at *5 (W.D.N.Y. Aug. 18, 1995).

    C.  Application of the Foregoing
        Principles to Plaintiffs' Claims

      1.  Miller's
          Constitutional Claim

Miller fails to state a constitutional claim.  Even if I make the generous assumption that Miller has adequately alleged that the conditions of his incarceration posed a substantial risk of serious harm, his claim fails the subjective prong of the deliberate indifference test.  Miller does not allege that Rosini actually knew of and disregarded a substantial risk to Miller's health or safety when he opened Chambliss' door, or that Rosini was aware of facts from which he could have inferred that there was a substantial risk of serious harm, that he drew such an inference and that he disregarded it.  See Farmer v. Brennan, supra, 511 U.S. at 837.  Likewise, Miller does not claim that he informed Rosini that he "had issues" with Chambliss, nor that these "issues" created a substantial risk of serious harm.  See Fair v. Weiburg, 02 Civ. 9218 (KMK), 2006 WL 2801999 at *5-*6 (S.D.N.Y. Sept. 28, 2006) (Karas, D.J.) (plaintiff failed to establish deliberate indifference for failure to protect when he

had not previously expressed concern for his safety from other inmates); Nunez v. Goord, 172 F. Supp. 2d 417, 430-31 (S.D.N.Y. 2001) (Marrero, D.J.) (no claim of deliberate indifference in failure to protect case where defendants were not aware of specific threats or risks to plaintiff).

In fact, Miller does not allege any facts suggesting that his injury was anything more than the result of negligent conduct.  No facts are alleged that even remotely suggest that the County Defendants deliberately set a trap for Miller, and no facts are alleged that would permit an inference of recklessness. Reading the complaint with leniency, see Haines v. Kerner, supra, 404 U.S. at 520-21, it appears that Miller alleges, at most, that Rosini negligently pressed the button to open Chambliss' cell instead of his own.  Such negligent conduct, no matter how serious the resulting injury, does not rise to the level of a constitutional violation.  See County of Sacramento v. Lewis, supra, 523 U.S. at 848, 855 (affirming summary judgment dismissing claim on behalf of deceased motorcycle passenger who died as a result of state actor's alleged negligence).

   2.   Chambliss'
        Constitutional Claim

     Although the County Defendants do not raise the issue,
because both plaintiffs were incarcerated at the time they
commenced these actions and their claims relate to the conditions
of their confinement, their claims are governed by the Prison
Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.  Subparagraph
(e) of that statute provides that "[n]o Federal civil action may
be brought by a prisoner . . . for mental or emotional injury
suffered while in custody without a prior showing of physical
injury."  Liner v. Goord, 196 F.3d 132, 134 (2d Cir. 1999);
Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999); Jones v.
Fischer, 07 Civ. 7589 (DC), 2008 WL 3174510 at *6 n.8 (S.D.N.Y.
Aug. 7, 2008) (Chin, D.J.); Cox v. Malone, 199 F. Supp. 2d 135,
139 (S.D.N.Y. 2002) (Chin, D.J.), aff'd without published opin-
ion, 56 F. App'x 43 (2d Cir. 2003).  Not even physical manifesta-
tions of emotional or mental injuries satisfy the PLRA's physical
injury requirement.  Figueroa v. Wright, 9:07-CV-1223 (TJM/GHL),
2009 WL 674262 at *8 n.48 (N.D.N.Y. Mar. 11, 2009) (collecting
cases).

     As a result of his altercation with Miller, Chambliss
claims to have suffered only mental injuries (Chambliss Compl. at
3).  In response to the County Defendants' contention that

                              19

Chambliss never alleged that Miller struck him (Defs' Mem. at
13), Chambliss emphasizes that he and Miller "'thr[ew] punches at
each other at the same time" (Chambliss Affidavit at 1; Chambliss
Compl. at 3).   Even if punches were thrown at Miller, the fact
remains that he has never alleged that he was physically
injured.[2]   Instead, he claims that he fears for his life around
Rosini and others, and that he suffers from paranoia (Chambliss
Compl. at 3).   These injuries alone do not satisfy the PLRA's
physical injury requirement and, therefore, Chambliss' claim
should be dismissed.   See e.g. Garcia v. Watts, 08 Civ. 7778
(JSR), 2009 WL 2777085 at *20 (S.D.N.Y. Sept. 1, 2009) (Rakoff,
D.J.); Petty v. Goord, 00 Civ. 803 (JSR), 2008 WL 2604809 at *7
(S.D.N.Y. June 25, 2008) (Rakoff, D.J.).

        Even if Chambliss could satisfy the requirements of the
PLRA, his claim would still fail because he does not allege that
the County Defendants acted with deliberate indifference.
Assuming that Chambliss could show that the conditions of his

---

        [2]In his complaint, Chambliss claims that on July 10, 2009,
Rosini dislocated Chambliss' hand and left him "cuffed to a gate"
(Chambliss Compl. at attached page) and in his Grievance Form, he
claimed that Rosini had broken his hand in a door (Chambliss
Grievance I at 1).   Presumably, Chambliss is referring to the
same incident in each of these documents.   However, the fact that
Rosini may have physically injured Chambliss on a prior occasion
does not change the fact that Chambliss was not physically
injured during the incident which serves as the basis for his
complaint.

confinement posed a substantial risk of serious harm, his claim
fails the subjective prong of an Eighth Amendment claim because
Chambliss does not allege that Rosini was aware of a substantial
risk to his safety when he opened Chambliss' cell, nor that he
disregarded that risk.  Chambliss asserts only that Rosini
"opened my rec. door hitting the wrong button on the control
panel" (Chambliss Compl. at 3).  While he did state in his
Grievance Form that he felt the incident "was set up to hurt
[him,]" he does not allege any facts supporting that conclusion
other than his allegation that Rosini had previously injured his
hand (Chambliss Grievance I at 1).  Rosini's alleged injury to
Chambliss on a prior date does not in and of itself make it
plausible that Rosini opened Chambliss' cell because he was aware
that it would create a substantial risk of serious harm, which he
chose to ignore.  Indeed, Chambliss claims in his affidavit that
"it doesn't matter if Officer Rosini intentionally or consciously
allowed me and Miller to come into contact, what matters is that
we did" (Chambliss Affidavit at 1).  Of course, Rosini's mental
state when he opened Chambliss' cell does matter, and without any
allegation that Rosini was reckless when he did so, Chambliss'
claim, at most, alleges negligence.

      Chambliss' statement that no emergency code was issued
during his fight does not alter this conclusion.  Again, Chambli-

ss does not allege that a failure to call an emergency code
created a substantial risk of serious harm, nor does he claim
that Rosini was aware of and disregarded that risk.  As the
County Defendants point out, a "slow reaction" to a fight,
including a failure to issue an emergency code, may constitute
negligence, but alone does not rise to the level of deliberate
indifference (Defs' Mem. at 13).  See McDaniels v. McKinna, 96
Fed. App'x 575, 580 (10th Cir. 2004) (where plaintiff accused
defendant of deliberate indifference because he failed to physi-
cally intervene in a fight and did not push an emergency button,
court found that officer's actions might constitute negligence,
but did not rise to the level of deliberate indifference).

        Moreover, to the extent that Chambliss' complaint can
be read to allege that the prior injury to his hand constitutes
an independent Eighth Amendment violation, the claim fails.
Chambliss gives little information regarding the way in which
Rosini allegedly injured him.  In his complaint, he states that
Rosini somehow dislocated his hand and handcuffed him to a gate
for some period of time, but does not allege that he did so with
a culpable state of mind (Chambliss Compl. at attached page).
Likewise, he only briefly referenced it in the Grievance Form
relating to the present complaint, stating only that Rosini broke
his hand in a door (Chambliss Grievance I at 1).  He does not

22

allege any facts to support an inference that Rosini did so deliberately or in a manner exhibiting deliberate indifference. Chambliss also notes in his complaint that he commenced a separate action regarding this incident, further indicating that he is not presently asserting an Eight Amendment claim concerning this injury (Docket Item 2 in 09 Civ. 7221).  Therefore, Chambliss has failed to state a claim that the County Defendants violated his constitutional rights in this complaint.

Miller's Section 1983 claim must, therefore, be dismissed since he fails to satisfy both the requirements of the PLRA and the deliberate indifference test.

D.  <u>The Remaining Claims</u>

With the dismissal of both plaintiffs' claims against the County Defendants, the only claims remaining in the cases are the claims between Miller and Chambliss for assault.  Neither Miller nor Chambliss allege any facts remotely suggesting that the alleged assaults occurred under color of state law; their respective assault claims are, therefore, state law claims.  <u>See generally</u> <u>American Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 50 (1999) ("the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful" (inner quotations omitted)).  Because

there is no longer any federal claim in this case, I dismiss the assault claims between Miller and Chambliss <u>sua</u> <u>sponte</u> without prejudice to their rights to pursue these claims in state court. 28 U.S.C. § 1367(c)(3); <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims"); <u>accord</u> <u>Isaacson v. New York Organ Donor Network</u>, No. 10-375-CV, 2011 WL 13467 at *2 (2d Cir. Jan. 4, 2011); <u>Kolari v. New York-Presbyterian Hosp.</u>, 455 F.3d 118, 122-23 (2d Cir. 2006).

VI.  <u>Conclusion</u>

        Accordingly, for all the foregoing reasons, the County

Defendants' motions to dismiss (Docket Item 17 in 09 Civ. 7773;

Docket Item 13 in 09 Civ. 8884) are granted in all respects.  In

addition, all claims in both actions other than the claims

against the County Defendants are dismissed without prejudice.[3]

Dated:  New York, New York
        March 16, 2011

                              SO ORDERED,


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies mailed to:

Mr. Jeffrey Miller
DIN #10-A-2618
Groveland Correctional Facility
7000 Sonyea Road
P.O. Box 50
Sonyea, New York 14556

Mr. Thomas J. Chambliss, Jr.
ID #85143-054
Metropolitan Detention Center
P.O. Box 329002
Brooklyn, New York 11232

_____

     [3]Because both Miller and Chambliss have failed to state a
claim on which relief can be granted, I need not address the
County Defendants' second and third arguments, namely that Rosini
has qualified immunity and Miller has failed to name Westchester
County as a defendant.

25

Christie L. Magno, Esq.
Christie D'Alessio, Esq.
Westchester County Attorney's Office
Room 600
148 Martine Avenue
White Plains, New York 10601